FILED
2018 Dec-07  PM 08:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CLAUDETTE STEELE,** | ) | |
| | ) | |
| **Plaintiff** | ) | **Civil Action No.:** |
| | ) | |
| **v.** | ) | **2:17-cv-02139-SGC** |
| | ) | |
| **BIRMINGHAM JEFFERSON** | ) | |
| **CIVIC CENTER AUTHORITY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE
DEFENDANT'S MOTION TO QUASH**

The Plaintiff, Claudette Steele (hereinafter "Plaintiff" or "Steele"), by and through undersigned counsel hereby files the following opposition in Response to the Defendant's Motion to Quash:

I.      **BACKGROUND AND PROCEDURAL HISTORY**

1.      On December 20, 2017, Ms. Steele filed a lawsuit against the Defendant alleging race and sex discrimination in employment. [Doc.#1].  On January 23, 2018, the Defendant filed an Answer to the Plaintiff's Complaint. [Doc.#14].

2.      As part of its Answer, the Defendant asserted the following Affirmative Defenses relevant here:

## EIGHTH AFFIRMATIVE DEFENSE

BJCC exercised reasonable care to prevent and promptly correct any discriminatory behavior in the workplace, including, but not limited to, having a well-established anti-discrimination policy and anti-harassment policy, and providing complainants with several avenues of redress.

## TENTH AFFIRMATIVE DEFENSE

BJCC denies it subjected Ms. Steele to terms and conditions of employment that were less favorable than those enjoyed by employees outside Ms. Steele's protected class.

3.     On November 6, 2018, as part of its discovery obligations, Defendant produced disciplinary records for Susette Hunter and Jerry Nelms, two white employees. [Ex. 1, Emails of 11/6/2018].

4.     Part of this production was a document entitled "SUMMARY DOCUMENTATION OF FOLLOW-UP MEETING WITH SUSETTE HUNTER TO DISCUSS CONSULTANTS CONCLUSION AND RECOMMENDATION". [Ex. 2, Summary of Quinn Report and Recommendations].  In this document, the Defendant stated that on October 31, 2016 it had met with Ms. Hunter to discuss  "the results of Mike Quinn's consultancy and recommendations."   [Id.].

5.     The Defendant had contracted with Mike Quinn, a local employment lawyer and mediator, to mediate an employment dispute between Ms. Hunter and her subordinate, Renee` Browning. [Ex. 3, Bell Dep. p. 73: ln. 6-p. 76: ln. 23].  Both

Hunter and Browning are Caucasian females who had been friends for approximately 20-years before they started working together at the Defendant's place of business. [Id.].

6.      On November 13, 2018, the Plaintiff took the deposition of Elma Bell, the Defendant's 30(b)(6) corporate representative and its Director of Human Resources.  [Ex. 3, Bell Dep. p. 6: ln. 17-p. 8: ln. 10; p. 24: lns. 12-23].  At this deposition, Ms. Bell testified that Mr. Quinn was specifically called in to **mediate** a dispute between Ms. Hunter and Ms. Browning and to give recommendations that would allow them to work together in a harmonious fashion. [Ex. 3, Bell Dep. p. 90: ln. 7-p. 91: ln. 5].

7.      When asked about Mr. Quinn's recommendations and what role he was contracted to fulfill with regard to the ongoing employment dispute between Ms. Hunter and Ms. Browning, the Defendant responded as follows:

Q.      Okay.  All right.  So, Mr. - - what did Mr. Quinn recommend that BJCC - -what did Mr. Quinn recommend that BJCC do with regards to Ms. Hunter's role in this conflict between her and her subordinates?

          Ms. Stewart: And, again, if that's just based on what he said, you can't answer that.

A.      I'm sorry.

          Ms. Stewart: You're asking what he recommended to them as their attorney in this?

3

Q.      Was he representing y'all as an attorney, or was he an investigator? Now that's very important.

**A.      He was in an investigative role.**  [Ex. 3, Bell Dep. p. 94: ln. 14-p. 95: ln. 6].

8.      At the conclusion of the November 13, 2018 deposition of Ms. Bell, the undersigned returned to his office and immediately issued a Rule 45 Non-party Subpoena to Mr. Quinn requesting all investigative notes related to the Susette Hunter and Renee` Browning matter. [Ex. 4, 11-13-2018 Email w/Subpoena].

9.      On November 13, 2018, the Defendant requested that Ms. Steele withdraw her Subpoena to allow for a reasonable time in which to object.  Ms. Steele withdrew the Subpoena as requested.

10.     On November 20, 2018, the Defendant objected to the Subpoena on the basis that Mr. Quinn's summary and recommendations to BJCC are privileged under the theory of attorney work product.

11.     After receiving the Defendant's objections, the Plaintiff reissued the Subpoena to Mr. Quinn.  The Defendant then filed a Motion to Quash on November 28, 2018.

## II.   LEGAL STANDARD

12.     Federal Rule of Civil Procedure 26(b)(1) states, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

4

defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  For discovery purposes, "relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." *Henderson v. Holiday CVS LLC,* 269 F.R.D. 282, 285-87 (S.D. Fla. 2010) (internal quotations and citations omitted).

13.    While privileged documents may be subject to work product or attorney client protections which shield their production, such protections are not without their limits. See e.g., *Cox v. Adm'r U.S. Steel & Carnegie,* 17 F.3d 1386, 1417 (11th Cir.), modified on other grounds, 30 F.3d 1347 (11th Cir. 1994) ("A defendant may not assert the attorney- client privilege "to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.").

14.    The Eleventh Circuit has held that "the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *See*

Case 2:17-cv-02139-SGC   Document 30   Filed 12/07/18   Page 6 of 15


*Cox,* 17 F.3d at 1417 (quoting *Conklin v. Turner,* 883 F. 2d 431, 434 (5th Cir. 1989)).

15.    Numerous courts have held that if "defendants assert as an affirmative defense the adequacy of their pre-litigation investigation into . . . claims of discrimination, then they waive the attorney-client privilege and the work product doctrine with respect to documents reflecting that investigation. Where a party puts the adequacy of its pre-litigation investigation at issue by asserting the investigation as a defense, the party must turn over documents related to that investigation, even if they would ordinarily be privileged." *Walker v. County of Contra Costa,* 227 F.R.D. 529, 535  (N.D.Cal. 2005); *Koumoulis v. Independent Financial Marketing Group, Inc.,* 29  F.Supp.3d  142,  148  (E.D.N.Y.  2014)("Employer waived attorney-client privilege, in employee's discrimination suit against employer, with respect to communications between its human resources department and outside counsel relating to the reasonableness of employer's efforts to correct the allegedly discriminatory behavior and reasonableness of its investigative policies and practices by asserting Faragher/Ellerth defense. . ."); *Wartell v. Purdue University,* 2014 WL 3687233 (N.D. Ind. 2014)(court held that an investigation report prepared by an outside attorney investigator was discoverable because the investigator was not offering legal advice and there was no evidence of imminent litigation);  *Koss v. Palmer Water Dept.,* 977 F.Supp.2d 28, 29 (D. Mass. 2013)("when a Title VII

defendant affirmatively invokes a *Faragher–Ellerth* defense that is premised ... on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. 312, 317-18 (2010)(The attorney-client "privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation); *E.E.O.C. v. Outback Steakhouse of FL, Inc.,* 251 F.R.D. 603 (D.Colo. 2008)(an assertion of the *Faragher/Ellerth* affirmative defense waives the protection of the work product doctrine and attorney-client privilege in relation to investigations and remedial efforts in response to employee complaints of discrimination because doing so brings the employer's investigations into issue).

## III.   ARGUMENT

16.     Courts in this District have found waiver of the attorney-client privilege may be implied in three circumstances: "[(1)] when a client testifies concerning portions of the attorney-client communication, [(2)] when a client places the attorney-client relationship directly at issue, and [(3)] when a client asserts reliance on an attorney's advice as an element of a claim or defense." *Cox,* 17 F.3d at 1418 (emphasis added).  All three of the aforementioned circumstances are present here.

17.     First, corporate representative Bell testified to portions of the alleged attorney client-communications regarding Hunter and Browning when she explained why Mr. Quinn's services were retained and the actions the Defendant took upon receiving his recommendations.  [Ex. 3, Bell Dep. P. 73: ln. 6-p. 75: ln. 23; p. 90: ln. 11-p. 92: ln. 23; p. 94: ln. 14-p. 96: ln. 12].  Moreover, the Defendant produced a document based on Mr. Quinn's report and recommendations to it.  Thus, the Defendant has waived any arguable privilege/work product protection with respect to discovery of the materials upon which Mr. Quinn's report and recommendations rests.

18.     Second, the Defendant placed the attorney-client relationship directly at issue because it has affirmatively asserted the *Faragher/Ellerth* defense and the defense that it did not treat Ms. Steele differently than persons outside of her protected class.  The Plaintiff needs access to Quinn's notes to test whether the Defendant exercised reasonable care to prevent and promptly correct discriminatory behavior in the workplace for all of its employees.[1]  Also, the Plaintiff needs Quinn's

---

[1]"Several courts confronting the issue have found that asserting the Faragher/Ellerth defenses waives any attorney-client privilege that might apply to a defendant's investigation documents or communications. See, e.g., *E.E. O.C. v. Outback Steakhouse of Fla., Inc.,* 251 F.R.D. 603, 611 (D.Colo.2008) (ruling that to the extent defendants pled Faragher/Ellerth affirmative defense, they waived any applicable attorney-client privilege and work product doctrine regarding investigations into employees' complaints); *Jones v. Rabanco, Ltd., No.* C03–3195P, 2006 WL 2401270 at * 4 (W.D.Wash. Aug.18, 2006) (holding that defendants' assertion of Faragher/Ellerth defense waived any applicable attorney-client privilege and

notes to ascertain whether she was treated less advantageously than Hunter, a white female who occupied a similar role in the Defendant's organization.

19.     Finally, the Defendant has admitted that it intended to rely on Mr. Quinn's advice in defense of any potential claim Browning may have filed against it. In such situations, the "attorney-client "privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." *Musa-Muaremi v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. 312, 317-18 (2010).

20.     Moreover, it should be held that the Hunter/Browning investigatory materials are not subject to work product/attorney client protection because [with the exception of a self-serving affidavit submitted by the Defendant's former counsel] all of the objective evidence here, including testimony from the Defendant's 30(b)(6)

---

"cause[d] any investigation and remedial efforts into the discrimination alleged in this case, in which Defendants engaged and in which their attorneys were involved, to become discoverable, despite any attorney-client privilege that may have normally attached to such communications"); *Walker v. County of Contra Costa,* 227 F.R.D. 529, 535 (N.D.Cal.2005) (holding that defendants waived any attorney-client privilege and work product protection for investigatory report prepared by attorney by asserting as a defense the adequacy of their pre-litigation investigation of plaintiff's discrimination claims, but also noting that intra-litigation analysis of investigation remained protected); McGrath v. Nassau County Health Care Corp., 204 F.R.D. 240, 245–246 (E.D.N.Y.2001) (finding subject matter waiver of attorney-client privilege because among other reasons plaintiff would be prejudiced if plaintiff "could not assess the full measure of [the employer's] response in light of what it learned from its investigation," and danger of misleading court for same reason); *Brownell v. Roadway Package System, Inc.,* 185 F.R.D. 19, 25 (N.D.N.Y.1999) (finding waiver of attorney-client privilege as to attorney's investigatory documents by employer's assertion of adequacy of investigation as affirmative defense)." *Musa-Muaremi v. Florists' Transworld Delivery, Inc.,* 270 F.R.D. 312, 317-18 (2010).

corporate representative and Director of Human Resources, shows that Mr. Quinn's communications with the Defendant and its outside counsel predominantly involved business, rather than legal, advice.

21.   The following Bell testimony makes this clear:

Q.   All right.  And it says, "On October 31st, 2016, at 1:00 p.m., Tad Snider, Susette Hunter and Elma Bell met to discuss the results of Mike Quinn's consultancy and recommendations?

A.   Yes.

Q.   Do you remember this meeting?

A.   Yes, uh-huh.

Q.   What was it about?

A.   **We had also contracted with Mr. Quinn to mediate a situation we had going on in our Sales Department where our Director of Sales [Hunter] and Assistant Director [Browning] just weren't getting along.** [Ex. 3, Bell Dep. p. 75: lns. 10-23].

\*\*\*

Q.   And what did y'all call in Mike Quinn to do?

A.   **To mediate the situation, to give us a recommendation.  We had had several meetings unsuccessful in terms of them being able to work together harmoniously.  So, we called him in as a mediator.** [Ex. 3, Bell Dep. p. 90: ln. 21-p.91: ln. 5]

***

Q.      Okay.  So Mr. Quinn comes in, right?

A.      Yes.

Q.      And does he interview everybody involved?

A.      He interviews the department, yes, the teammates in the
        department.

Q.      How many folks did he talk to, to your
        understanding?

A.      I believe it was about five.

Q.      You said five?

A.      I believe it was five, yes.

Q.      Okay. And out of those five folks, do you remember
        any particulars about what Mr. Quinn uncovered or
        what he discovered?

A.      **What I recall is that he made recommendations
        for both.**

Q.      For both?

A.      **Because he, too, felt like they both were partly
        responsible for the communication breakdown.
        And so, he made some recommendations for Ms.
        Hunter in terms of some coaching and some
        training, and for Ms. Brown to be - -to be less
        sensitive.  We, as subordinates, don't get to
        dictate to our managers.**  [Ex. 3, Bell Dep. p. 91:

11

ln. 23-p. 93: ln. 3].

\*\*\*

Q.  Okay.  All right.  So, Mr. - - what did Mr. Quinn recommend that BJCC - -what did Mr. Quinn recommend that BJCC do with regards to Ms. Hunter's role in this conflict between her and her subordinates?

Ms. Stewart: And, again, if that's just based on what he said, you can't answer that.

A.  I'm sorry.

Ms. Stewart: You're asking what he recommended to them as their attorney in this?

Q.  **Was he representing y'all as an attorney, or was he an investigator?  Now that's very important.**

A.  **He was in an investigative role.**  [Ex. 3, Bell Dep. p. 94: ln. 14-p. 95: ln. 6].

22.  The Director of Human Resources directly contradicts the Defendant's self-serving affidavit that Mr. Quinn was contracted because litigation was anticipated.  There is no credible evidence that Quinn was contracted to provide legal advice.  Courts have held that in the context of the attorney-client privilege, "legal advice involves the interpretation and application of legal principles to guide future

12

conduct or to assess past conduct'.... Obtaining or providing such legal advice must be the " 'predominant purpose' " of a privileged communication."[2]  *Koumoulis v. Independent Financial Marketing Group, Inc.,* 29 F.Supp.3d 142, 146 (E.D.N.Y. 2014).  Such was not the case here as Bell clearly testified that Quinn's role was that of a mediator and to make recommendations on how the belligerents could co-exist.

23.     Furthermore, that Mr. Quinn's recommendations were delivered to the Defendant's former attorneys does not automatically make them privileged.  In reference to such an argument, courts have held that: "(1) the mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged,"; and (2) "[i]nvestigatory reports and materials are not protected by the attorney-client privilege or the workproduct doctrine merely because they are provided to, or prepared by, counsel."  *Koumoulis v. Independent Financial Marketing Group, Inc.,* 29 F.Supp.3d 142, 146 (E.D.N.Y. 2014)(internal citations omitted).

24.     In this case, Mike Quinn conducted an investigation the contents of which are relevant to the claims and defenses of the parties.  Mr. Quinn took notes of his investigation and created other documents as part of it.  [See, Ex. 5, Privilege Log].  Mr. Quinn reported his findings to the Defendant and has withheld them from

---

[2]

the Plaintiff.  Plaintiff's counsel needs these documents to assist him in preparing his case and defeating any motion for summary judgment.

## IV.    CONCLUSION

The Plaintiff and her counsel respectfully request that this Honorable Court deny the Defendant's Motion to Quash and order Mr. Quinn to produce the contested documents within 7-days.

Respectfully Submitted,

/s/Roderick T. Cooks
Roderick T. Cooks
Attorney for Plaintiff

**OF COUNSEL:**
WINSTON COOKS, LLC
505 20th Street North
Suite#815
Birmingham, AL 35203
(205) 502-0970     telephone
(205) 278-5876     facsimile
email: rcooks@winstoncooks.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document on all persons listed below via the Court's CM/ECF filing system and/or U. S. Mail, postage prepaid and addressed to them as follows:

Taffi S. Stewart, Esq.
Lloyd, Gray & Whitehead, P.C.
Colonial Bank Building
2501 Twentieth Place South, Suite 350
Birmingham, AL 35223

on this the **7**th day of **December,  2018**.

<u>/s/Roderick T. Cooks</u>
Roderick T. Cooks

15